UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION AT LAFAYETTE

| | | |
|---|---|---|
| NAOMI WOLF, ) | | |
|     Plaintiff, ) | | |
| ) | | |
| v. ) | CAUSE NO.: 4:20-CV-005-JEM | |
| ) | | |
| ANDREW SAUL, ) | | |
| Commissioner of the ) | | |
| Social Security Administration, ) | | |
|     Defendant. ) | | |

**OPINION AND ORDER**

This matter is before the Court on a Complaint [DE 1], filed by Plaintiff Naomi Wolf on January 29, 2020, and Plaintiff's Opening Brief [DE 12], filed May 28, 2020. Plaintiff requests that the decision of the Administrative Law Judge be reversed and remanded for further proceedings. On August 6, 2020, the Commissioner filed a response, and Plaintiff filed her reply on August 11, 2020.

**I.  Background**

On June 27 and 29, 2016, Plaintiff filed applications for benefits alleging that she became disabled on June 7, 2015. Plaintiff's application was denied initially and upon consideration. On December 17, 2018, Administrative Law Judge ("ALJ") Marc Jones held a hearing at which Plaintiff, along with an attorney and a vocational expert ("VE"), testified. On January 30, 2019, the ALJ issued a decision finding that Plaintiff was not disabled.

The ALJ made the following findings under the required five-step analysis:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2022.

2. The claimant did not engage in substantial gainful activity since June 7, 2015, the alleged onset date.

1

3. The claimant has the following severe impairments: anxiety, fractures of the lower left extremities, neurocognitive disorder, traumatic brain injury, and vision loss.

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

5. The claimant has the residual functional capacity ("RFC") to lift and carry up to 10 pounds occasionally, lesser weights more frequently, stand and/or walk about 2 hours in an 8-hour workday, and sit about 6 hours in an 8-hour workday with normal breaks. The claimant is further limited to occasionally climb ramps and stairs, as well as occasionally balance, stoop, and crouch. She can never climb ladders, ropes, or scaffolds, never crawl, never kneel, never work at unprotected heights, never around dangerous machinery with moving mechanical parts, and never operate a motor vehicle as part of her work-related duties. She can never work in vibration, extreme cold, or humidity and wetness. She must use a medically necessary cane at all times while walking and cannot work on wet and slippery surfaces or on dangerous or uneven terrain. She is limited to simple work-related decisions, and simple routine, tasks with no assembly line work or strictly-enforced daily production quotas, and few changes in a routine work setting. She is limited to tasks that do not require binocular vision or peripheral vision. She can never work in bright sunshine or in bright flickering lights, such as would be experienced in welding or cutting metals.

6. The claimant is unable to perform any past relevant work.

7. The claimant was a younger individual age 18-44 on the alleged disability onset date.

8. The claimant has at least a high school education and is able to communicate in English.

9. Transferability of job skills is not an issue in this case because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled" whether or not the claimant has transferable job skills.

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

11. The claimant has not been under a disability, as defined in the Social

Security Act, from June 7, 2015, through the date of this decision. The Appeals Council denied Plaintiff's request for review, leaving the ALJ's decision the final decision of the Commissioner.

The parties filed forms of consent to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case. [DE 9]. Therefore, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c) and 42 U.S.C. § 405(g).

**II.      Standard of Review**

The Social Security Act authorizes judicial review of the final decision of the agency and indicates that the Commissioner's factual findings must be accepted as conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Thus, a court reviewing the findings of an ALJ will reverse only if the findings are not supported by substantial evidence, or if the ALJ has applied an erroneous legal standard. *See Briscoe v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (quoting *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003)).

A court reviews the entire administrative record but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ. *See Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005); *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Butera v. Apfel*, 173 F.3d 1049, 1055 (7th Cir. 1999). Thus, the question upon judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is not whether the claimant is, in fact, disabled, but whether the ALJ "uses the correct legal standards and the decision is supported by substantial evidence." *Roddy v.*

3

*Astrue,* 705 F.3d 631, 636 (7th Cir. 2013) (citing *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010); *Prochaska v. Barnhart*, 454 F.3d 731, 734-35 (7th Cir. 2006); *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004)). "[I]f the Commissioner commits an error of law," the Court may reverse the decision "without regard to the volume of evidence in support of the factual findings." *White v. Apfel*, 167 F.3d 369, 373 (7th Cir. 1999) (citing *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997)).

At a minimum, an ALJ must articulate their analysis of the evidence in order to allow the reviewing court to trace the path of her reasoning and to be assured that the ALJ considered the important evidence. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002); *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995). An ALJ must "'build an accurate and logical bridge from the evidence to [the] conclusion' so that, as a reviewing court, we may assess the validity of the agency's final decision and afford [a claimant] meaningful review." *Giles v. Astrue*, 483 F.3d 483, 487 (7th Cir. 2007) (quoting *Scott*, 297 F.3d at 595); *see also O'Connor-Spinner*, 627 F.3d at 618 ("An ALJ need not specifically address every piece of evidence, but must provide a 'logical bridge' between the evidence and his conclusions."); *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001) ("[T]he ALJ's analysis must provide some glimpse into the reasoning behind [the] decision to deny benefits.").

### III. Analysis

Plaintiff argues that the ALJ erred in failing to limit Plaintiff to jobs that require no reading of fine print; failed to weigh the opinion of Dr. Ryan Oetting, Ph.D.; failed to consider the combined effects of Plaintiff's severe and non-severe impairments; failed to include Plaintiff's need to elevate her lower left extremity in the RFC; and failed to adequately account for Plaintiff's moderate limitations in maintaining concentration, persistence, or pace.

A. <u>Medical Opinion</u>

Plaintiff argues that the ALJ failed to adequately weigh the opinion of consultative examiner Dr. Ryan Oetting, Ph.D. The ALJ must evaluate "every medical opinion [he] receive[s]." 20 C.F.R. § 404.1527(c). An ALJ must determine what weight to give medical opinions according to the following factors: the length, nature, and extent of the physician's treatment relationship with the claimant; whether the physician's opinions were sufficiently supported; how consistent the opinion is with the record as a whole; and whether the physician specializes in the medical conditions at issue, among other factors. 20 C.F.R. §§ 404.1527(c)(2)(i)-(ii), (c)(3)-(6) (replaced by 20 C.F.R. §404.1520c for claims filed after March 27, 2017).

Dr. Oetting conducted a consultative examination on September 7, 2016. AR 1501. Dr. Oetting noted that Plaintiff's WMS-IV Testing showed low average visual memory, low average intermediate memory, low average delayed memory, and extremely low visual working memory. AR 1503. Dr. Oetting found that Plaintiff had posttraumatic stress disorder ("PTSD"), amenestic disorder due to head trauma, as well as psychosocial stressors associated with medical and emotional issues, childhood abuse, and unemployment. AR 1504. He also opined that "[m]emory issues, along with physical limitations, may make it difficult to currently persist in full time employment." *Id.* Dr. Oetting opined that Plaintiff "may be best served by assistance from a concerned individual in the management of her funds." *Id.*

The ALJ discussed Dr. Oetting's opinion in his decision, listing the information that Plaintiff reported to Dr. Oetting. The ALJ also noted Plaintiff's current medications, as well as a few of Dr. Oetting's findings, such as "some deficits in memory loss and PTSD anxiety," but found that "these are not more than marginally limiting and are well accommodated in the residual functional capacity, and by way of conservative treatments including medication and counseling."

5

AR 19. The ALJ ultimately concluded that "there are no indications that the claimant would not continue performing well and earning income." AR 20.

While the ALJ referred to Dr. Oetting's opinion in the decision, he did no more than simply list observations from the opinion. The ALJ provided no analysis, failed to assign weight to the opinion, and provided no discussion of the factors in 20 C.F.R. § 404.1527(c). Listing evidence does not eliminate an ALJ's duty to provide a complete analysis and discussion to form a logical bridge from the evidence to a conclusion. *Smith v. Astrue*, No. 09 CV 6210, 2011 WL 722539, at *31 (N.D. Ill. Feb. 22, 2011) (noting that "cataloguing" the evidence "is no substitute for analysis or explanation"). Without proper analysis, the Court cannot follow the ALJ's reasoning and determine whether the ALJ properly considered and weighed Dr. Oetting's opinion.

Dr. Oetting offered insight into Plaintiff's limitations in spatial memory and visual working memory and how that may cause difficulties with full time work. While Dr. Oetting did not provide much insight into Plaintiff's functional limitations, he did opine that Plaintiff would need assistance managing her money and that her memory issues in combination with her physical impairments may make full time employment difficult for her. But the ALJ failed to provide any weight to Dr. Oetting's opinion or provide any analysis of the opinion. Without any analysis, the Court cannot conclude that the ALJ adequately considered physician statement.

B. Mischaracterization of Evidence

Next, Plaintiff asserts that the ALJ mischaracterized evidence regarding her left extremity swelling and need to elevate her left leg. The ALJ found that although clinical records from 2018 "clearly discuss" Plaintiff's acute left lower leg swelling, this was a "one time exacerbation" that was not long term or recurrent. AR 20. The ALJ also found no evidence that the swelling stemmed from the initial accident or caused limitations that would prevent Plaintiff from performing full time

work. *Id.* Plaintiff asserts that there was much more evidence of lower left leg swelling linked to her accident that required further limitations in the RFC.

Plaintiff was a victim of a hit-and-run by a drunk driver while she was walking on June 7, 2015. AR 713. Among her many serious injuries, Plaintiff suffered a fractured left lower tibial plateau, skin graft of the left thigh, left thigh soft tissue degloving, and brain hemorrhaging. AR 571-72. During her recovery, Plaintiff underwent manipulation of her left knee under anesthesia due to contracture of the left knee. AR 1419. During the procedure, some soft tissue was torn at the left tibial plateau incision site. AR 1404, 1434-35. Her orthopedist then recommended physical therapy, which Plaintiff was unable to attend due to lack of insurance. AR 1417. Over a week later, in August 2015, Plaintiff returned to her orthopedist with continued trouble with left knee flexions. AR 1417. One month later, On September 25, 2015, Plaintiff attended a physical consultative examination where the examiner noted she was wheelchair bound and reported numbness in her left leg. AR 1049-51.

On September 28, 2015, Plaintiff visited the emergency room due to left sided pain and left hip pain due to a fall. AR 1173. A physical exam showed left hip tenderness and left anterior pelvis tenderness, and an x-ray showed a "fracture of the transverse sacral fixation crew at the level of the mid sacrum just to the left of midline." AR 1175-76. One day later, Plaintiff again saw her orthopedist complaining of left knee pain and pelvic discomfort, but her orthopedist determined that there was no screw fracture and recommended weightbearing as tolerated. AR 1413-14. In November 2015, she was noted to have "exquisite tenderness to soft tissue of legs with light touch." AR 1158. On December 11, 2015, Plaintiff again returned to the emergency room complaining of pain and tenderness in the front of her left leg. AR 1068. The doctor noted left leg pain, swelling, and warmth shooting into bottom of foot and hip. *Id.* There was a small area of induration to her

7

mid left tibia. AR 1070. One week later, on December 18, 2015, Plaintiff once again visited the emergency room with complaints of worsening swelling to her left leg, and that she was having trouble ambulating. AR 1145. The physician noted 1+ edema in her left lower extremity, as well as trace edema to the right lower extremity. AR 1147. The physician also noted decreased range of motion in her lower left extremity. *Id.* There was no evidence of a DVT, but the physician found that her acute bilateral peripheral edema may require follow up with her primary care physician if there is a need for chronic pain medication. AR 1148.

Plaintiff continued to present to the emergency room with lower left extremity swelling and muscle spasms in January 2016. AR 1138-40, 1143. On January 25, 2016, Plaintiff complained of left leg pain, swelling, and increased left shin pain to her orthopedist. AR 1410. Her physical exam showed a moderate Tendelenburg gait and extreme point tenderness. AR 1411. Her orthopedist recommended hardware removal from her left knee, suspecting her hardware might be causing some of her pain. *Id.* One month after surgery to remove hardware from her knee on February 17, 2016, Plaintiff again complained of worsening pain to her left mid-tibia, difficulty flexing her hip, and pain while walking. AR 1406. Her orthopedist noted she used a walker to ambulate, and a physical exam showed tenderness at her anterior tibia. *Id.* Throughout 2016, Plaintiff continued to complain of left leg pain and tenderness, and her orthopedist noted left tibial edema. AR 1491-93, 1404-05.

At a consultative exam in September 2016, Plaintiff demonstrated abnormal posture and gait and was unable to flex her left knee. AR 1510-12. In March 2018, Plaintiff again visited the emergency room with complaints of constant left lower leg pain, and she reported baseline pain and swelling in that leg. AR 1657. Physical examination showed edema in the left leg, 2+ DPPT pulses, and no flexion extension at the knee. AR 1659. The physician found that Plaintiff's edema was

8

likely "due to past injury and somewhat chronic in nature." AR 1661. The physician recommended that Plaintiff "regularly elevat[e]" her left lower extremity "as much as possible," and to use compression socks to help with swelling. AR 1661.

The ALJ improperly ignored a multitude of evidence that shows a history of left leg swelling that started with her accident. The ALJ "cannot simply cherry-pick facts that support a finding of non-disability while ignoring evidence that points to a disability finding." *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010) (citing *Myles v. Astrue*, 592 F.3d 672, 678 (7th Cir. 2009)). The ALJ improperly stated that the swelling was a one-time incident that could not be linked back to her initial injury, but the evidence in the record shows multiple instances of swelling starting immediately following her surgeries from the accident all the way through 2018. Moreover, contrary to the ALJ's assertion that her emergency room visit in 2018 for swelling was acute in nature and not indicative of long-term swelling due to her accident, the treating physician noted that the swelling was "somewhat chronic in nature" and was likely due to her past injury. AR 1661. The medical record that the ALJ relied on to state that Plaintiff's swelling was only a "one-time exacerbation" states that her swelling was, in fact, chronic. AR 20, 1661. The ALJ failed to properly consider the relevant evidence when he ignored medical records indicating swelling dating back to the initial injury and mischaracterized the evidence he cited to in support of his conclusion.

The ALJ failed to consider all of the evidence in the record, and therefore failed to build the requisite logical bridge from the evidence to his conclusion. *Getch v. Astrue*, 539 F.3d 473, 480 (7th Cir. 2008). The ALJ ignored evidence of swelling in the record and failed to consider the number of times Plaintiff visited the emergency room with complaints of swelling. This error requires remand, as the possible need to elevate her legs may alter the VE's testimony regarding available work.

This matter is being remanded due to the ALJ's errors in evaluating medical opinion evidence and in discussing Plaintiff's left leg swelling and pain. Plaintiff makes further argument regarding the physical and mental RFC. On remand, the ALJ is directed to consider all of the medical evidence and opinions in the record. The ALJ should fully consider each of Plaintiff's alleged impairments, alone and in combination, and provide a logical bridge from the evidence to his conclusion.

Plaintiff requests reversal with remand for an award of benefits. An award of benefits is appropriate only if all factual issues have been resolved and the records supports a finding of disability. *Briscoe*, 425 F.3d at 356. Given the ALJ's error in analyzing medical opinion evidence and in considering Plaintiff's left leg swelling, the factual issues have not been resolved, and remand for benefits is not appropriate here. *Campbell v. Shalala*, 988 F.2d 741, 744 (7th Cir. 1993) ("the record is not so clear that we can award or deny benefits on appeal"). On remand, the ALJ is instructed to fully consider Plaintiff's left leg chronic swelling, as well as to properly discuss and analyze Dr. Oetting's medical opinion.

**III. Conclusion**

For the foregoing reasons, the Court hereby **GRANTS** the relief requested in Plaintiff's Opening Brief [DE 12] and **REMANDS** this matter for further proceedings consistent with this opinion.

SO ORDERED this 25th day of February.

s/ John E. Martin
MAGISTRATE JUDGE JOHN E. MARTIN
UNITED STATES DISTRICT COURT

cc:  All counsel of record